Wright, J.
Whatever may have been the current of decision elsewhere, the principle was settled in this state, more than forty years ago, and has since been steadily maintained, that if a surety request the creditor to collect the debt from the principal, and the creditor refuse or neglect to do so at .a time when it is collectible, and from a subsequent change of *556 circumstances it becomes uncollectible, the surety is by such conduct of the creditor, exonerated from his liability. (King v. Baldwin, 17 John., 383; Paine v. Packard, 13 John., 174.) It is not contended that it makes any difference in the rule, or in the application of the principles on which it is founded, that the principal to which the creditor refuses or neglects to resort when he should, is a fund or property primarily liable for the debt in exoneration of the surety instead of being a person so primarily liable. It is urged, however, that the case of King v. Baldwin, decided in the Court of Errors, in 1819, in which the rule was distinctly settled, has been uniformly repudiated in this state as unsound in principle. I do not so understand the course of decision, but on the contrary, when the facts have -brought the case under review within the rule, it has been uniformly maintained. (Manchester Iron Manf. Co. v. Sweeting, 10 Wend., 397; Hoffman v. Hulburt, 12 Wend., 377.) I am aware that there are dicta of one or two judges condemning the rule as unsound in cases where its application was not necessary to these decisions, and where indeed the facts did not justify its application. (Warner v. Beardslee, 8 Wend., 198, per Walworth, Chancellor; Herrick v. Borst, 4 Hill, 650, per Cowen, J.) Even in these cases, however, it was conceded that the rule was too firmly established to be overturned, that when the principal was perfectly responsible at the time the debt became due, and the creditor, although requested by the surety, refused to proceed and collect his debt until the ■ principal became insolvent, the surety would be exonerated from liability. For myself, were it an original question in a court of equity, I should entertain no doubt of the soundness of the rule. The surety is a guarantee that the principal shall pay the debt, and the creditor is under an equitable obligation to collect his debt from the principal in the first instance if he can. It is conceded that a court of equity, at the instance of the surety, may compel the creditor to coerce paj-ment from a solvent principal, but this could not be so if there were no moral •or equitable duty on the part of the creditor to collect the debt from the principal, or it were not unjust and unconscien *557 tious to throw the debt on the guarantor and not on the party primarily liable. It is not in accordance with the intention of the parties that the surety should pay the debt in the first instance, and it is but just that it should be collected from the party or fund primarily liable, if the party have the ability to pay, or the fund be adequate for the purpose, and not from the guarantor. It may be conceded that there is no positive duty incumbent on the creditor to prosecute measures of active diligence;' and hence mere delay unaccompanied by any valid contract (if some other equity does not interfere) will not amount to laches, so as to work a discharge of the surety. If, however, the creditor does any act injurious to the surety or inconsistent with" his .rights, or omits to do any act when required by the surety, which his-duty enjoins him to do, and which proves injurious to the surety, the latter may set up such conduct as a defence to any action brought, at least in equity, against him.
It will not be pretended that, if the creditor actually collude with the principal to cast the debt on the surety, the latter is not exonerated: so also if, by omitting to do an act, on the requirement of the surety, which equity and his duty to the surety enjoins on him to dp, the surety is injured by the omission, the latter ought not to be held. It is inequitable and unj ust that the surety’s liability should continue from improper motives, at the option and for the convenience of the creditor, and against the surety’s will and express wish, until the principal becomes irresponsible. Duty enjoins the creditor to enforce payment from the party primarily liable; and if requested by the surety to collect the debt when it is collectible from such party by measures of active diligence, and the creditor refuses or neglects to do it until it becomes uncollectible.from the principal, such conduct-ought to be a defence in equity to any suit brought against the surety to charge him with the payment of the debt. Regarding Beekman as the surety, the present case aptly illustrates the justice and equity of the rule. In 1847 the plaintiff had a debt of $15,000 past due, secured by a mortgage on land worth from $25,000 to *558 $30,000, or double the amount of such debt. The mortgaged premises were primarily liable for the debt, in exoneration of Beekman, the. surety. Beekman, in 1847, conveyed the premises, subject to the mortgage, to the trustees of four banks, and shortly after the conveyance applied to the plaintiff and requested him to enforce the mortgage against the premises for the purpose of collecting the mortgage debt, and at the same time informing him of his sale and conveyance of the premises subject to the mortgage. In pursuance of such request the plaintiff wrote to the agent of the trustees requiring payment of the sum secured by the mortgage, but upon representations made by such agent of the entire security of the debt, even without reference to the value of the property, he neglected and declined to enforce the mortgage or to collect the same out of the premises, but on the contrary determined to continue the loan of the money secured by the mortgage, against the express wishes of Beekman, for the convenience of the trustees and the banks whom they represented, in one of which the plaintiff was a stockholder. No steps were taken to collect the debt until 1857, and after the trustees refused to pay the annual interest, though for three years succeeding Beekman’s request to the plaintiff, the,, mortgaged premises were worth $10,000 or $15,000 more than the debt, and up to 1853 would have sold for more than enough to pay the amount of the mortgage. Afterwards, and when the fund primarily liable has depreciated in value to less than' one-third of the debt, the creditor proceeds to collect it- by foreclosure and sale of the mortgaged premises, and asks that the estate of the surety may be adjudged liable to pay the deficiency. It is very plain to me that a creditor, who disregards an express request made by a surety to' proceed and collect his debt at a time when it is collectible, and from improper motives willfully or negligently omits a duty to the surety enjoined on him in this respect, until the debt is uncollectible from the principal, has no equitable rights to be enforced against the surety. In this case, when the primary fund for the payment of the debt was ample, when urged by the surety to collect it, and for years *559 afterwards, the creditor chose to let his loan lie, against the quasi surety’s expressed wish, because he considered it an advantageous mortgage investment, until the fund primarily liable for the debt has depreciated to a sum less than .one-third of such debt, it would be wholly inequitable to charge a deficiency upon the surety caused purely by the creditor’s own conduct. The plaintiff refused to comply with the request of Beekman for the reason that he wished to continue the loan, showing by his conduct that he did not rely upon the surety. There would be no equity in allowing him to call upon the surety when it is apparent that if he had complied with his request, he would have secured his debt.
This is not an action upon Livingston’s bond or Beekman’s guaranty of such bond, but the creditor asks the aid of a court of equity to enable him to enforce the payment of his debt. The rule before stated not being founded upon contract between the surety and the creditor, but upon a principle of equity obliging the creditor to act justly towards the surety, when the creditor seeks relief in a court of equity, if his case falls within the rule, it is proper that it should be applied to it. Here, at least, the surety has the right to demand that the creditor neither do, nor omit to do any act enjoined oú him as an equitable duty which injures the surety against his express wish or request. The present presents a very clear and strong case for the application of the rule. It is said that there is the absence of any notice of facts from which the plaintiff could have supposed that delay was likely to prove injurious to Beekman. But this can make no difference. Besides the mortgaged premises were a flouring mill and its appurtenances, subject to depreciation in value by fluctuations in the business to which alone the property was adapted, and by the wear and destruction of its machinery and appendages. These things were doubtless understood by the plaintiff, and after the representations made to him by the agent of the trustees, that the debt was perfectly secure without reference to the mortgaged premises, he gave no heed to their value or their depreciation. In his letter to the agent of the banks holding the premises in *560 November, 1857, after setting forth the agent’s representations in 1847, he distinctly declared that those representations as to perfect security had been his sole inducement against the wish expressed of Beekman and the mortgagor, to continue the loan since the conveyance by Beekman.
The point is made that the obligation of Beekman was not one of suretyship •; but that after he took the conveyance of the land from Livingston charged with the debt, and resumed the administration of the fund so charged, his situation was precisely the same as if he had then, as an original transaction, borrowed the $15,000 from the plaintiff and mortgaged his own land as security. The ground, I think, is not maintainable. Beekman was- a surety in fact as well as in form, and it was in that character that the plaintiff sought to charge his estate. Penfield was- the original debtor, and the mortgage Was given to secure his debt. He was personally liable .for the debt unless the subsequent dealing of the plaintiff relieved him from the liability. Livingston became the owner of some eight acres of the mortgaged premises on which the mill was situated, at a time when the debt had been reduced to $15,000 and applied to the plaintiff to release all the land covered by the mortgage except the eight acres of which he was the owner. This the mortgagee consented to do, upon the condition that Livingston would give him his bond conditioned for the payment of the amount unpaid of the mortgage, debt in three years, and that Beekman should guarantee such bond. Accordingly, Livingston gave the bond required, and Beekman guaranteed it. This was in 1843, after the mortgage debt was due, and it was under this guaranty of Livingston’s bond that the only personal liability of Beekman for the mortgage debt ever existed. Livingston, in 1846, conveyed the mortgaged premises to Beekman, subject to the mortgage, and he deducted the amount thereof from the consideration allowed for the premises, but this created no personal liability of-Beekman for. the mortgage debt. (Belmont v. Coman, 22 N. Y., 438.) The only effect of the transaction was, as between Beekman and Livingston, to constitute the mortgaged *561 premises held by Beekman under the conveyance, the primary fund for the payment of the mortgage debt. The taking of the conveyance, such as it was, did not render Beekman personally liable as a principal debtor. But if he did thereby become personally liable for the debt, such obligation was not by any contract with the mortgagee; and the mortgagee has a right to lay hold of, for his own benefit, a contract thus made between Beekman and Livingston, and enforce it, only as such an obligation as it truly and equitably is. In substance and equity Beekman stood in the position of surety to the plaintiff for the mortgage debt.
I entertain no doubt that the sole personal liability of Beekman was upon his covenant of guaranty; but if this were otherwise, it is clear that after the conveyance of the property to the trustees, subject to the mortgage, he stood in substance and in equity in the position of a surety, the property in the hands of the grantees constituting the primary fund for the payment of the debt. (Marsh v. Pike, 10 Paige, 595; Russell v. Pistor, 3 Seld., 171.)
The judgment of the Supreme Court should be affirmed.
Gould, J. The only possible liability of Mrs. Beekman, as executrix, is on the guaranty. And that is the undertaking of a surety. In this State it is too late to question the principle of King v. Baldwin (17 Johns.), that where a surety requests the creditor to proceed to enforce collection from the principal debtor and the, creditor neglects to do so, and the principal debtor thereafter becomes unable to pay, the loss thereby incurred falls on the creditor and not on the surety.
Seldeu, J., did not sit in the case; all the other judges concurring,
Judgment affirmed.